COMMONWEALTH of Pennsylvania,
Appellee

v.

John Michael BOHONYI, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 2, 2005.

Filed May 23, 2006.

Joseph A. Ratasiewicz, Media, for appellant.

George M. Green, Asst. Dist. Atty., Media, for Com., appellee.

BEFORE: JOYCE, STEVENS, and McCAFFERY, JJ.

OPINION BY McCAFFERY, J.

¶ 1 Appellant, John Michael Bohonyi, appeals from the judgment of sentence [1] imposed after a jury found him guilty of criminal solicitation [2] (one count statutory sexual assault and one count involuntary deviate sexual intercourse ("IDSI")), criminal attempt [3] (corrupting minors), and criminal use of a communication facility.[4] The charges stemmed from Appellant's activity on the Internet with a person who represented herself to be a thirteen year old girl, but who was actually a police officer working with the Delaware County Internet Crimes Against Children Task Force; that is, Appellant had been caught in a sting. On appeal, Appellant asks us to determine whether the evidence was sufficient to sustain the convictions; whether

1. Appellant was sentenced to an aggregate term of incarceration of no less than two and no more than five years.

2. 18 Pa.C.S.A. § 902.

3. 18 Pa.C.S.A. § 901.

4. 18 Pa.C.S.A. § 7512.

trial counsel provided effective representation; and whether the trial court erred in the extent to which it permitted the prosecutor to cross-examine Appellant's character witnesses. After careful review, we determine that none of the issues presented has any merit; thus, we affirm.

¶ 2 The factual and procedural history underlying this matter is as follows. In April 2002, when he was a twenty year old college student, Appellant made the acquaintance over the Internet of the above-referenced undercover officer, who was using the screen name "Stacie13" in an on-line chat room. During their first communication, Stacie13 told Appellant that she was thirteen years old. After the first exchange on April 23, 2002, they proceeded to have many private conversations with one another through the use of "instant messages" and e-mail. After exchanging physical descriptions, Appellant questioned Stacie13 about her sexual experience and indicated that he was interested in pursuing a sexual liaison with her. He asked frequently whether she would be willing to perform specific sexual acts with him, including oral and vaginal intercourse, and assured her that she would take great pleasure in these activities. During some of these conversations, Appellant advised Stacie13 that on several previous occasions, he had engaged in both oral and vaginal sex with girls between the ages of thirteen and fifteen. Appellant also sought and received assurances from Stacie13 that she was not a police officer.

¶ 3 After engaging in numerous sexually-explicit conversations spanning a period of approximately four months, Appellant drove from his home in New Jersey to Media, Delaware County on August 12, 2002, as arranged in his then most recent exchanges with Stacie13. Once in Media, Appellant met not the expected thirteen year old correspondent, but several police officers, who promptly arrested him.

¶ 4 Appellant was taken to the police station where, after being informed of and waiving his *Miranda* rights, he made a statement to the officers. He admitted to writing all of the material attributed to him in the on-line conversations. Appellant admitted going to Media in order to "meet up with" the person he believed to be his Internet correspondent; that he talked about having sexual intercourse with her; that he talked about having oral sex with her; and that he "knew" she was thirteen years old.

¶ 5 At trial, however, Appellant testified otherwise. Appellant cast himself as a latter-day Henry Miller, eager to expand the boundaries of erotic literary expression. He testified that he was, indeed, the author of the on-line descriptions detailing his sexual exploits with girls in their early teenage years, but maintained that the descriptions were of imagined, not actual events, and that his intent in indulging in them, while simultaneously viewing on-line pornography, was to pursue cyber-sexual fantasy.[5] Appellant denied that he engaged in these activities with the purpose of actually meeting any of the persons with whom he chatted or exchanged instant messages. According to Appellant's testimony at trial, the reason he went to Media on August 12th was to satisfy his curiosity and merely to observe the person with whom he had engaged in so many flights of fancy. He testified that he did not intend to pursue any sexual activities of any kind with his correspondent in Media.

5.  Appellant's Internet persona was a combination of his actual self, *e.g.*, physical description, and another, more highly-charged individual, *e.g.*, listed occupation: "American Gladiator."

¶ 6 Appellant was represented prior to and at trial by Mark Fliedner, Esquire. Following his convictions, Appellant retained new counsel, who filed a post-sentence motion on Appellant's behalf and represented him at the evidentiary hearing thereon, at which proceeding Mr. Fliedner was the only witness. Mr. Fliedner testified regarding his pre-trial activities, preparation for trial and trial performance. The trial court specifically concluded that Mr. Fliedner did not tender ineffective assistance, and it denied the post-sentence motion on July 7, 2004. Appellant filed a timely appeal, and represented by yet another attorney, Joseph A. Ratasiewicz, Esquire, now raises the following five issues for our review:

1. Was the evidence insufficient to sustain the conviction of criminal solicitation to commit involuntary deviate sexual intercourse as the Commonwealth failed to prove elements of the crime?

2. Was trial counsel ineffective in failing to request a jury instruction that the Appellant must be found not guilty unless the Commonwealth has proven beyond a reasonable doubt that the Appellant knew that alleged complainant was 13 years of age?

3. Was trial counsel ineffective in failing to pursue the suppression motion with regards [sic] to Appellant's arrest?

4. Was trial counsel ineffective or did the court commit error, when they allowed the introduction by the Commonwealth of testimony concerning the Internet Crimes [A]gainst Children Task Force,

which testimony and argument was highly prejudicial to Appellant's case?

5. Was there an abuse of the court[']s discretion permitting improper cross[-]examination by the prosecutor to attack Appellant's character witnesses in violation of Pa.R.E. 405?

(Appellant's Brief at 9).

¶ 7 Appellant's first issue is a challenge to the sufficiency of the evidence to sustain the conviction of criminal solicitation to commit IDSI.[6] Specifically, Appellant argues that the Commonwealth did not prove that he intended to engage in prohibited conduct on a particular date and at a particular location. (Appellant's Brief at 15–18). Appellant has misconstrued the elements of criminal solicitation and has failed to demonstrate that the Commonwealth did not present sufficient evidence to convict him of this offense.

■■■■ ¶ 8 We review this issue under the following well-settled principles:

Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict[-]winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defen-

---

6. The question presented for review pertains only to the conviction of criminal solicitation to commit IDSI. (Appellant's Brief at 9). Therefore, we do not reach the issue of the sufficiency of the evidence to sustain the conviction of solicitation to commit statutory sex-

ual assault. *See* Pa.R.A.P. 2116(a); *Commonwealth v. Butler*, 845 A.2d 866, 867–68 (Pa.Super.2004) (declining to consider argument that is neither set forth as a separate issue nor suggested by the question actually raised).

dant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the factfinder is free to believe all, part, or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Love*, 896 A.2d 1276, 1283 (Pa.Super.2006) (citations and internal quotations omitted). The statutory prohibitions against criminal solicitation and IDSI provide as follows:

> § 902. Criminal solicitation
>
> (a) DEFINITION OF SOLICITATION.—A person is guilty of solicitation to commit a crime if with the intent of promoting or facilitating its commission he commands, *encourages or requests* another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.

18 Pa.C.S.A. § 902(a) (emphasis supplied).

> § 3123. Involuntary deviate sexual intercourse
>
> (a) OFFENSE DEFINED.—A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant:
>
> (7) who is less than 16 years of age and the person is four or more years older than the complainant and the

complainant and person are not married to each other.

18 Pa.C.S.A. § 3123(a)(7).

■ ¶ 9 Our review of the evidence in the record amply supports the jury's verdict that Appellant encouraged and/or requested Stacie13 to engage in the criminal act of involuntary deviate sexual intercourse. Appellant selectively quotes from his e-mail and instant messages in his brief in an attempt to establish that none of his propositions was other than speculative conjecture about what the couple "might" do with each other should they ever meet. (Appellant's Brief at 15, 17). However, a complete reading of the protracted dialogue between Appellant and Stacie13 reveals that Appellant persistently described for Stacie13 both the mechanics of and the sensual gratification to be derived from their anticipated mutual genital stimulation.[7] Taken in their entirety, Appellant's communications with Stacie13 could reasonably have been found by the jury to have constituted encouragement to commit IDSI. Additionally, the evidence supports the finding that the encouragement to commit IDSI involved Appellant's meeting Stacie13 on a specific date and at a specific time, *i.e.*, on August 12, 2002, at 2:00 p.m., in the parking lot of a designated convenience store in Media, Pennsylvania. Accordingly, Appellant's first issue is without merit.

■ ¶ 10 Appellant's next three issues involve allegations of trial counsel's ineffectiveness both before and during tri-

---

**7.** Appellant's argument ignores the fact that his messages to Stacie13 describe behavior proscribed by statute as deviate sexual intercourse, *i.e.*, that Appellant would touch Stacie13's genitals with his mouth and tongue and that Stacie13 would place Appellant's penis in her mouth. *See* 18 Pa.C.S.A. § 3101

(defining "deviate sexual intercourse" as sexual intercourse per os or per anus between human beings); *Commonwealth v. Zingarelli*, 839 A.2d 1064, 1070 (Pa.Super.2003), *appeal denied*, 579 Pa. 692, 856 A.2d 834 (2004) (IDSI includes acts of anal and/or oral intercourse).

al.[8] Claims of ineffective assistance of counsel are reviewed pursuant to the following well-established principles:

> To prevail on a claim that counsel was constitutionally ineffective, the appellant must overcome the presumption of competence by showing that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met.

*Commonwealth v. Malloy*, 579 Pa. 425, 448–49, 856 A.2d 767, 781 (2004) (citations and internal quotation omitted).

¶ 11 The first of these three of Appellant's arguments is that trial counsel was ineffective for failing to request a particular jury instruction. Specifically, Appellant maintains that trial counsel should have requested a jury instruction specifying that an element of the solicitation charge was that Appellant knew or believed he was soliciting an individual who was less than sixteen years old. (Appellant's Brief at 20). Upon review of the jury charge as a whole, we determine that trial counsel was not ineffective in failing to make this request.

■■■■ ¶ 12 When reviewing the propriety of a jury charge, an appellate court examines the charge as a whole. *Commonwealth v. Lukowich*, 875 A.2d 1169, 1174 (Pa.Super.2005), *appeal denied*, 584 Pa. 706, 885 A.2d 41 (2005). The trial court has broad discretion in formulating jury instructions, so long as the law is presented to the jury in a clear, adequate, and accurate manner. *Id.*

> The law is well settled that a trial court is not obligated to instruct a jury upon legal principles which have no applicability to the presented facts. There must be some relationship between the law upon which an instruction is requested and the evidence presented at trial. However, a defendant is entitled to an instruction on any recognized defense which has been requested, *which has been made an issue in the case*, and for which there exists evidence sufficient for a reasonable jury to find in his or her favor.

*Commonwealth v. Buksa*, 440 Pa.Super. 305, 655 A.2d 576, 583 (1995) (citations and

---

8. Ordinarily allegations of trial counsel's ineffectiveness are not reviewable on direct appeal. *Commonwealth v. O'Berg*, 584 Pa. 11, 15–19, 880 A.2d 597, 600–01 (2005); *Commonwealth v. Grant*, 572 Pa. 48, 67, 813 A.2d 726, 738 (Pa.2002). However, where the trial court has held an evidentiary hearing relating to trial counsel's performance and has rendered a decision specifically addressing the claims of ineffectiveness, we may consider the issue on direct appeal. *Commonwealth v. May*, 584 Pa. 640, 652–55, 887 A.2d 750, 757–58 (2005); *Commonwealth v. Bomar*, 573 Pa. 426, 465–66, 826 A.2d 831, 854–55 (2003); *accord Commonwealth v. Malloy*, 579 Pa. 425, 448, 856 A.2d 767, 781 (2004) (reviewing allegations of trial counsel's ineffectiveness on direct appeal where trial court held an evidentiary hearing at which trial counsel testified regarding his strategy during the trial, and the trial court opinion addressed appellant's claims of ineffective assistance). Here, because the trial court conducted an evidentiary hearing at which trial counsel testified and thereafter addressed the issue of the adequacy of trial counsel's representation in its Pa.R.A.P.1925(a) opinion, the matter is properly before us for review.

internal quotations omitted; emphasis supplied).

¶ 13 Appellant's argument that the Commonwealth, in the first instance, was required to prove as an element of the crime that Appellant knew or believed that Stacie13 was thirteen years old is without legal support. In matters involving sexual offenses against children, when criminality depends on the child's being below a specified age but older than fourteen years, it is **a defense for the defendant to prove** that he or she reasonably believed the child to be above the critical age. 18 Pa.C.S.A. § 3102. Because Section 3102 places the initial burden on the *accused* to prove mistake of age, absent such a defense being proffered by the defendant, the Commonwealth bears no burden of proof regarding the defendant's knowledge of or belief as to the age of the child victim.

¶ 14 In the case *sub judice,* Appellant did not proffer the defense of mistake of age, nor did he present any evidence in support thereof and upon which the jury could have found in his favor. Because there was no evidence upon which the court could have properly based a charge regarding mistake of age, it was not error for trial counsel not to request such a charge. Appellant's claim of ineffectiveness on this basis is thus without arguable merit.

¶ 15 Appellant's next allegation of trial counsel's ineffectiveness is that counsel should have sought the suppression of both Appellant's statement to police and a seized, fraudulent identification document, based on a lack of probable cause for the arrest. Appellant contends that because he never went to the arranged meeting place, which was the parking lot of a particular convenience store, but instead was arrested in the parking lot of the post office across the street, there was an insufficient basis upon which to effectuate an arrest. (Appellant's Brief at 21–23). At the post-trial evidentiary hearing, Mr. Fliedner testified that he had determined that there was no basis upon which to challenge the legality of the arrest, and thus no basis upon which to seek suppression of Appellant's statement. Therefore, he made the decision not to file a motion to suppress evidence obtained as a result of Appellant's arrest.

¶ 16 A warrantless arrest is proper where the police have probable cause to believe that an individual has committed a serious crime. As we have recently articulated:

> An officer's warrantless arrest of a suspect, to be lawful, must be supported under the totality of the circumstances by probable cause to believe that (1) a felony has been committed; and (2) the person to be arrested is the felon. Probable cause typically exists where the facts and circumstances within a police officer's knowledge would warrant a person of reasonable caution to believe that an offense has been committed.

*Commonwealth v. George,* 878 A.2d 881, 884 (Pa.Super.2005), *appeal denied,* —— Pa. ——, 891 A.2d 730 (2005) (citations and internal quotations omitted).[9]

¶ 17 In the case *sub judice,* the police did have probable cause to believe that Appellant had committed the offense of solicitation to commit IDSI at the time they arrested him. The officers knew that Appellant had engaged in an extensive, months' long Internet dialog with a person representing herself to be a thirteen year old girl, Stacie13. Appellant had exhorted and encouraged Stacie13 to engage in sex-

---

**9.** Solicitation to commit IDSI is graded as a felony of the first degree based upon IDSI being a felony of the first degree. 18 Pa. C.S.A. §§ 905(a), 3123(a).

ual intercourse with him, and had then arranged to meet her at a specific place in Media on August 12, 2002, at 2:00 p.m. Appellant had described his vehicle as a black Jeep Cherokee, and had advised that he would be wearing a white t-shirt and a red hat. The officers observed a Jeep Cherokee at approximately 1:30 p.m. in a post office parking lot located exactly across the street from the convenience store where the pre-arranged meeting was to occur. The occupant of the Jeep matched the physical description Appellant had previously provided to Stacie13, including his clothing, *i.e.*, a white t-shirt, and there was a red cap resting on the console between the driver's and front passenger's seats of the Jeep. Under these circumstances, probable cause to believe that Appellant had committed the crime of solicitation was established, and prior counsel cannot be faulted for failing to pursue a motion to suppress that had no basis and thus was without merit. *See Commonwealth v. John,* 854 A.2d 591, 597 (Pa.Super.2004), *appeal denied,* 582 Pa. 682, 870 A.2d 320 (2005) (upholding conviction for solicitation to commit IDSI where defendant (1) sought to have sex with a thirteen year old girl, suggested various sexual scenarios that the two would explore, and sent pornographic materials on how the sexual contact would proceed; (2) made specific arrangements to meet the girl; and (3) traveled from his place of business in Delaware to the pre-arranged meeting location). *Compare Commonwealth v. Jacob,* 867 A.2d 614, 618–19 (Pa.Super.2005) (holding that evidence was sufficient to prove offense of *attempt* to commit IDSI where defendant (1) pursued Internet conversations with a person he believed to be a twelve year old girl; (2) introduced sexual topics into the conversation by telling her that he would teach her fellatio, cunnilingus and sexual intercourse; (3) arranged a meeting with her; (4) initi-

ated a telephone conversation with a person he believed to be the twelve year old girl and asked her if he could "teach" her fellatio when they met; (5) gave an accurate physical description of himself and his automobile so that his intended victim would be able to find him; and (6) obtained driving directions to the pre-arranged meeting place and appeared on time at the agreed location). In light of the existence of probable cause to arrest Appellant, the trial court committed no error in finding that trial counsel was not ineffective for failing to file a motion to suppress any evidence obtained by the police as a result of the arrest.

¶ 18 Appellant's third and final issue relating to his allegation of trial counsel's ineffectiveness was counsel's failure to object to the introduction of testimony concerning the Internet Crimes Against Children Task Force. Appellant argues that this evidence was irrelevant and prejudicial to him. (Appellant's Brief at 24–28). This issue is without merit because trial counsel's course of conduct did have a reasonable basis designed to effectuate Appellant's interest; therefore, no relief is warranted.

¶ 19 At the post-trial evidentiary hearing, Mr. Fliedner testified that he had determined that evidence concerning the Delaware County Internet Crimes Against Children Task Force would not be harmful to Appellant. It was his strategy not to object to this evidence because it could actually be viewed in a light that would be beneficial to the defense. As explained by Mr. Fliedner:

[W]e had a very specific theory of the case, particularly as it related to the [a]ttempt crime. And that was that a well-funded, well-organized, high-profile organization like the task force that had been set up, was under a tremendous amount of pressure to make arrests in

such matters, and that that would account for the kind of what we argued to be jumping the gun that took place when [Appellant] was placed under arrest here. So that I think it's fair to say that I listened to the testimony, I digested the fact that that was consistent with and actually supportive with [sic] our position that—the Commonwealth had a lot to sort of justify themselves for, and that resulted in an arrest of this young man that was not warranted—at least not some of the crimes for which he was ·charged.

(Notes of Testimony, 6/28/04, at 38).

¶ 20 We agree with the analysis of the trial court that defense counsel had a reasonable basis, grounded in furthering Appellant's interest, for choosing not to object to the testimony about the task force. As noted by the trial court, "[a]llowing the prosecution to describe the formal, organized efforts to find and establish cases against miscreants trolling the [I]nternet might [have] help[ed] distinguish [Appellant] from the typical offender sought. . . . As Mr. Fliedner noted, the ICAC testimony reflected the well-funded and organized task force. In turn[,] this reflected a significant degree of pressure to make arrests." (Trial Court Opinion, dated January 5, 2005, at 23, 24). In his brief, Appellant does not address Mr. Fliedner's explanation for his trial strategy, and, therefore, offers no argument as to the reasonableness of counsel's chosen strategy. Because counsel's conduct was reasonably designed to effectuate Appellant's interest, we determine that the trial court did not commit error by denying relief on this basis.

¶ 21 Appellant's final issue on appeal is whether the trial court abused its discretion by permitting the prosecutor to impeach the defense character witnesses with evidence of Appellant's possession of a fal-

sified identification card and by questioning them regarding their knowledge of the instant charges. (Appellant's Brief at 28–34). However, because this issue was not raised in Appellant's Pa.R.A.P.1925(b) statement, it has not been preserved for appellate review.

¶ 22 Any issue not raised in a statement required by Pa.R.A.P.1925(b) is deemed waived on appeal. *Commonwealth v. Castillo*, 585 Pa. 395, 402, 888 A.2d 775 (2005); *Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998); *Commonwealth v. Stevenson*, 894 A.2d 759, 766 (Pa.Super.2006).

¶ 23 In his statement of matters complained of on appeal, Appellant sets forth twelve specific instances of trial counsel's ineffectiveness, and, in conclusion, alleges that the evidence was insufficient to sustain the conviction and that the verdict was against the weight of the evidence. The matter of the falsified identification card was raised as two independent instances of trial counsel ineffectiveness, but was not raised as a matter of abuse of trial court discretion in the first instance. Therefore, because the issue of abuse of discretion by the trial court in its allowance of cross-examination of defense character witnesses was not specified in the Rule 1925(b) statement, it is waived and not subject to review on appeal.

¶ 24 After having carefully reviewed the matters upon which Appellant seeks relief and having found that none provides a basis upon which to set aside the convictions or to grant a new trial, we affirm the judgment of sentence.

¶ 25 Judgment of sentence affirmed.

¶ 26 STEVENS, J. concurs in the result.