# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Carl Worrell, Jr.,     :
             :
       Appellant  :
             :
     v.        :  No. 291 C.D. 2014
             :
Commonwealth of Pennsylvania,  :  Submitted: July 18, 2014
Department of Transportation,   :
Bureau of Driver Licensing    :

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE ROBERT SIMPSON, Judge
     HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**     **FILED: September 2, 2014**

Richard Carl Worrell, Jr. (Licensee) appeals from the Order of the Court of Common Pleas of Lawrence County (trial court) denying his appeal from the suspension of his operating privilege by the Department of Transportation, Bureau of Driver Licensing (Department) pursuant to Section 1547(b)(1)(ii) of the Vehicle Code[1] for refusal to submit to chemical testing. On appeal, Licensee argues that

---

[1] 75 Pa. C.S. § 1547(b)(1)(ii). Section 1547(b)(1)(ii) provides, in relevant part:

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

*(Continued…)*

the trial court erred by admitting into evidence his statement to the arresting police officer that he was driving the vehicle when: (1) the Department did not establish the *corpus delicti* in this case; and (2) he was clearly in police custody, but had not been advised of his legal rights before he was questioned about whether he was driving the vehicle. Licensee argues further that the trial court's denial of his appeal was against the weight of the evidence. Discerning no error, we affirm.

By notice mailed October 16, 2013, the Department notified Licensee that it was suspending his operating privilege for eighteen months pursuant to Section 1547(b)(1)(ii) for refusing to submit to a chemical test on September 24, 2013. Licensee appealed the suspension, and a *de novo* hearing was held before the trial court.

During the hearing the Department presented documentary evidence, including Licensee's driving record, which showed Licensee's prior convictions for violating Section 3802 of the Vehicle Code, 75 Pa. C.S. § 3802, and the testimony of Officer Matthew Liberatore, who was the only witness to testify. Based on Officer Liberatore's testimony, the trial court found as follows. On

. . . .

> (ii) For a period of 18 months if any of the following apply:
>
>> (A) The person's operating privileges have previously been suspended under this subsection.
>> (B) The person has, prior to the refusal under this paragraph, been sentenced for:
>> (I) an offense under section 3802[.]

Id.

2

September 24, 2013, Officer Liberatore was on patrol when he noticed "a green pickup truck parked sideways with half of the vehicle on the sidewalk and the other half on the roadway." (Trial Ct. Op. at 2.) Licensee was "standing on the sidewalk next to the vehicle" zippering his pants. (Trial Ct. Op. at 2.) Officer Liberatore smelled a strong odor of alcohol when he approached Licensee. (Trial Ct. Op. at 2.) Officer Liberatore asked Licensee what he was doing, and Licensee "responded that he had been drinking at the Polish National Alliance Club" (Club), which was three to four blocks away. (Trial Ct. Op. at 2.) Licensee responded further that he drove from the Club to where the vehicle was parked and that he had stopped because he needed to urinate. (Trial Ct. Op. at 2.) The vehicle's engine was not running, but the keys were in the ignition. (Trial Ct. Op. at 2.) The vehicle was registered to Licensee's wife. (Trial Ct. Op. at 2.)

Officer Liberatore administered three field sobriety tests which Licensee failed to properly perform. (Trial Ct. Op. at 2.) Officer Liberatore also conducted a portable breath test which indicated that Licensee's blood alcohol content was .17 percent. (Trial Ct. Op. at 2.) Officer Liberatore placed Licensee under arrest for driving under the influence and transported him to the local hospital for chemical testing. (Trial Ct. Op. at 2.) Upon arrival at the hospital, Licensee became argumentative, would not cooperate, and interrupted Officer Liberatore when he read Licensee the chemical testing warnings. (Trial Ct. Op. at 2.) After being warned that his operating privilege would be suspended if he refused to submit to chemical testing, Licensee refused to submit. (Trial Ct. Op. at 2-3.)

3

At the conclusion of Officer Liberatore's testimony, Licensee's counsel argued, based on the *corpus delicti* rule, that the Department failed to meet its burden of proof because it did not present any evidence independent of Licensee's statement to Officer Liberatore to prove that Licensee operated the vehicle while he was intoxicated. (Hr'g Tr. at 20.) Counsel argued further that Licensee's Miranda[2] rights were violated because he was in police custody and had not been advised of his legal rights when he made the incriminating statement that he drove the vehicle to the location where Officer Liberatore found it parked. (Hr'g Tr. at 25.)

The trial court issued an Order denying Licensee's appeal and reinstating the Department's suspension of Licensee's operating privilege. In an opinion in support of its Order, the trial court found Officer Liberatore's testimony credible and further found, based on that testimony, that Officer Liberatore had reasonable grounds to believe that Licensee was operating the vehicle while intoxicated. (Trial Ct. Op. at 5-6, 10.) The trial court pointed out that Officer Liberatore observed: (1) the vehicle parked sideways on the road; (2) Licensee urinating in public; (3) a strong odor of alcohol emanating from Licensee; (4) the keys to the vehicle were in the ignition; (5) Licensee's failure to pass three field sobriety tests; and (6) the portable breath test indicated that Licensee's blood alcohol content was .17%. (Trial Ct. Op. at 6.) Therefore, the trial court concluded that it did not err by admitting Officer Liberatore's testimony that Licensee stated that he was driving the vehicle because there was other evidence that supported its finding that

_____

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

4

Officer Liberatore had reasonable grounds to believe that Licensee was driving under the influence of alcohol. (Trial Ct. Op. at 6.)

Next, the trial court determined that Officer Liberatore was not constitutionally required to advise Licensee of his <u>Miranda</u> rights before Licensee made any statements because the encounter between Officer Liberatore and Licensee was an investigatory detention. (Trial Ct. Op. at 8.) Finally, the trial court concluded that its Order denying Licensee's appeal was not against the weight of the evidence because the credible evidence established that Officer Liberatore had reasonable grounds to believe that Licensee was operating the vehicle under the influence of alcohol and that he refused to submit to chemical testing. (Trial Ct. Op. at 9-11.) Licensee now appeals the trial court's Order to this Court.[3]

In support of his appeal, Licensee first argues that, because there is no evidence independent of his verbal statement that he was driving the vehicle, the Department failed to prove that Licensee was operating the vehicle while under the influence of alcohol. Licensee points out that Officer Liberatore testified that when he approached the vehicle: (1) Licensee was standing outside the vehicle; (2) he never saw Licensee inside the vehicle; (3) the vehicle was not running; and (4) no one was ever seen inside the vehicle. Therefore, Licensee asserts, the Department failed to prove the *corpus delicti* in this case.

---

[3] "Our standard of review in a license suspension case is to determine whether the trial court's findings are supported by competent evidence, whether errors of law have been committed, or whether the trial court's determinations demonstrate a manifest abuse of discretion." <u>Department of Transportation v. Renwick</u>, 669 A.2d 934, 936 n.2 (Pa. 1996).

Initially, we note that Licensee's reliance on the *corpus delicti* rule is misplaced. As explained by our Superior Court, "[t]he well-established *corpus delicti* rule provides that 'a **criminal** conviction may not stand merely on the out[-]of[-]court confession of one accused, and thus a case may not go to the fact[-]finder where independent evidence does not suggest that a crime has occurred.'" Commonwealth v. Cuevas, 61 A.3d 292, 295 (Pa. Super. 2013) (quoting Commonwealth v. Edwards, 555 A.2d 818, 823 (Pa. 1989)) (emphasis added, alterations in original, footnote omitted). "This rule is rooted in the hesitancy to **convict a person of a crime** solely on the basis of that person's statements." Id. (emphasis added). Therefore, the *corpus delicti* rule is applicable in criminal matters. However, suspensions of operating privileges for refusal of chemical testing are civil proceedings, not criminal proceedings. Sitoski v. Department of Transportation, Bureau of Driver Licensing, 11 A.3d 12, 21 (Pa. Cmwlth. 2010). Thus, the trial court was not prohibited, pursuant to the *corpus delicti* rule, from considering Licensee's statements to Officer Liberatore in this civil proceeding.

The Department's burden in license suspension cases is to prove that the arresting officer "had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under [the] influence of alcohol."[4] Banner v. Department of Transportation, Bureau of Driver Licensing, 737 A.2d 1203, 1206 (Pa. 1999). "In assessing whether it has met this

---

[4] The Department must also prove that the licensee was asked to submit to a chemical test, refused to do so, and was warned that a refusal might result in a suspension of his or her operating privilege. Banner v. Department of Transportation, Bureau of Driver Licensing, 737 A.2d 1203, 1206 (Pa. 1999). Licensee does not challenge that the Department established these elements of its burden.

6

burden, we consider the totality of the circumstances and determine, as a matter of law, whether a person in the position of the arresting officer could have reasonably reached this conclusion." Helt v. Department of Transportation, Bureau of Driver Licensing, 856 A.2d 263, 266 (Pa. Cmwlth. 2004) (citing Banner, 737 A.2d at 1207). This standard is not very demanding, and the arresting officer's belief that the licensee had been driving while under the influence of alcohol need not be correct. Koutsouroubas v. Department of Transportation, Bureau of Driver Licensing, 61 A.3d 349, 353 (Pa. Cmwlth. 2013). The legal question of whether reasonable grounds exist is "reviewable by the court on a case by case basis." Banner, 737 A.2d at 1207.

When determining if reasonable grounds exist, the following may be considered: "the location of the vehicle, whether the engine was running and whether there was other evidence indicating that the motorist had driven the vehicle at some point prior to the arrival of the police." Id. It is not necessary that the licensee "be observed behind the steering wheel of the vehicle while it was in motion" or "even necessary that the licensee be observed behind the steering wheel." Department of Transportation, Bureau of Driver Licensing v. Bendik, 535 A.2d 1249, 1251 (Pa. Cmwlth. 1988).

In this matter the trial court found that, even without considering Licensee's statement that he drove the vehicle from the Club and had stopped to urinate, Officer Liberatore had reasonable grounds to believe that Licensee had been operating the vehicle while intoxicated. This finding is based on the following facts gleaned from Officer Liberatore's credible testimony: (1) the vehicle,

7

registered to Licensee's wife, was parked partway on the sidewalk and partway on the road; (2) a strong odor of alcohol was emanating from Licensee, who was standing next to the vehicle; (3) Licensee failed three field sobriety tests; (4) Licensee was urinating in public; (5) the keys were in the ignition; and (6) the portable breath test indicated that Licensee's blood alcohol content was .17%. Accordingly, based on the foregoing, we conclude that the trial court did not err by determining that Officer Liberatore's belief that Licensee had driven the vehicle while intoxicated was reasonable.

Next, Licensee argues that the trial court erred by permitting into evidence his incriminating statement that he was driving the vehicle when it was clear he made the statement in response to Officer Liberatore's questioning after being placed in police custody and before he was read his Miranda rights.[5] Notwithstanding that a licensee may not seek a reversal of an operating privilege suspension based on a claim that his rights as a criminal defendant have been compromised, including the contention that the licensee was not properly advised of his Miranda rights, Sitoski, 11 A.3d at 21, we conclude that this issue was thoroughly and correctly analyzed and ably disposed of as follows in the comprehensive and well-reasoned opinion of the trial court:

---

[5] The Department argues that Licensee has waived any argument that Officer Liberatore should not have been permitted to testify regarding what Licensee said when he was first questioned because Licensee neither objected to this testimony nor did he move to have it stricken in accordance with Rule 103(a) of the Pennsylvania Rules of Evidence, Pa. R.E. 103(a) (requiring that any claims of error with respect to the admittance or exclusion of evidence must be preserved on the record). While Licensee's counsel did not make a specific objection during Officer Liberatore's testimony, counsel argued before the trial court that Licensee's Miranda rights had been violated because he was questioned regarding his involvement in a crime while in police custody. (Hr'g Tr. at 22-25.) Therefore, we will address the merits of this issue.

8

As to one's right against self-incrimination, a person must be informed of his or her Miranda rights prior to custodial interrogation by police. Miranda v. Arizona, 384 U.S. 436[, 473] (1966); Commonwealth v. Sites, . . . 235 A.2d 387[, 389-90] ([Pa.] 1967) [(quotation marks omitted)]. "Interrogation [is] police . . . conduct 'calculated to, expected to, or likely to evoke [an] admission.'" Commonwealth v. Brown, . . . 711 A.2d 444[, 451] ([Pa.] 1998) [(quoting Commonwealth v. Brantner, 406 A.2d 1011, 1016 (Pa. 1979))]. ["]Interrogation occurs when the police should know that their words or actions are reasonably likely to elicit an incriminating response, [. . .] and the circumstances must reflect a measure of compulsion above and beyond that inherent in custody itself.["] Commonwealth v. Fisher, . . . 769 A.2d 1116[, 1125] ([Pa.] 2001). Clearly, the Pennsylvania courts have established that any statements made as a result of a custodial interrogation are presumptively involuntary and inadmissible, unless the accused is advised of his or her Miranda rights. Commonwealth v. Levanduski, 907 A.2d 3, 23 (Pa. Super. 2006) (citing Commonwealth v. DiStefano, 782 A.2d 574, 579 (Pa. Super. 2001)); [s]ee also Commonwealth v. Pakacki, . . . 901 A.2d 983, 991 ([Pa.] 2006) [(Baer, J., concurring)]. A custodial interrogation has been defined as "questioning initiated by the police after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." Commonwealth v. Clinton, 905 A.2d 1026, 1032 (Pa. Super. 2006) (citing Commonwealth v. Ingram, 814 A.2d 264, 271 (Pa. Super. 2002)). An interrogation occurs when a police officer should have known that his or her actions or words were reasonably likely to elicit an incriminating response from the defendant. Commonwealth v. Hughes, . . . 639 A.2d 763, 771 ([Pa.] 1994) (citing Rhode Island v. Innis, 446 U.S. 291 . . . (1980); Commonwealth v. Whitley, . . . 457 A.2d 507 ([Pa.] 1983)). However, unsolicited remarks that are not the result of a custodial interrogation constitute voluntary and spontaneous statements, which are not subject to suppression. [Fisher, 769 A.2d at 1125] (citing Commonwealth v. Gibson, . . . 720 A.2d 473, 480 ([Pa.] 1998)).

In addition, an investigative detention is not the equivalent of an arrest and is not subject to the dictates of Miranda and warnings are not required prior to questioning. [Pakacki, 901 A.2d at 988]. An investigatory detention, which must be supported by reasonable suspicion, subjects a suspect to a stop and period of detention, but lacks the coercive aspects of an arrest. Commonwealth v. Phinn, 761 A.2d 176, 181 (Pa. Super. 2000) (citing Commonwealth v. Ellis, . . .

662 A.2d 1043, 1047 ([Pa.] 1995)). Ordinary traffic stops, without additional indicia that the accused is under arrest, are investigative detentions and do not constitute custody for the purposes of providing <u>Miranda</u> warnings. <u>Commonwealth v. Haupt</u>, . . . 567 A.2d 1074, 1078 ([Pa. Super.] 1989) (citing <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439 . . . (1984); <u>Pennsylvania v. Bruder</u>, 488 U.S. 9 . . . (1988)).

   In the current matter, Officer Liberatore was not constitutionally required to provide [Licensee] with <u>Miranda</u> warnings prior to his statement as the encounter between he and [Licensee] was an investigatory detention. The testimony presented to this Court indicates that Officer Liberatore was patrolling Factory Avenue when he observed the green pickup truck parked sideways with half of the vehicle on the sidewalk and the other half on the roadway. He also noticed [Licensee] standing next to the vehicle zipping his pants. The police officer stopped and approached [Licensee], who emanated a strong odor of alcohol. Officer Liberatore spoke with [Licensee] at that time, who revealed that he drove the vehicle to that location from the [Club] and parked it there to urinate. There is no indication that the police officer was placing [Licensee] into custody at that time, he was merely investigating the situation due to the unusual circumstances concerning the manner in which the vehicle was parked and [Licensee] zipping his pants. At that point, the encounter was an investigatory detention, which lacks the coercive aspects of custodial detention and the police officer was permitted to ask [Licensee] questions that may elicit incriminating responses without providing [Licensee] with a recitation of the <u>Miranda</u> warnings. [Licensee] failed three field sobriety tests and a portable breath test after he made those statements to Officer Liberator[e]. The police officer placed [Licensee] under arrest after all of those events transpired. . . . .

(Trial Ct. Op. at 6-9.) Accordingly, the trial court "did not err in admitting Officer Liberatore's testimony concerning the statements made by [Licensee] indicating that he operated the vehicle." (Trial Ct. Op. at 9.)

Finally, Licensee argues that the trial court's Order denying his appeal is against the weight of the evidence. Licensee contends that there was no credible

evidence that he was ever driving the truck; therefore, the trial court abused its discretion in finding that Licensee was operating a vehicle while under the influence of alcohol.

Here, even without considering Licensee's statement that he drove the vehicle from the Club to the location where Officer Liberatore found it parked sideways, the trial court found, based on Officer Liberatore's credible testimony, that the officer had reasonable grounds to believe that Licensee was operating the vehicle while intoxicated. Questions of evidentiary weight and credibility are "solely in the province of the trial court." Sitoski, 11 A.3d at 17. Accordingly, we are bound by the trial court's credibility determination in this matter and cannot reweigh the evidence in Licensee's favor.

For the foregoing reasons, the trial court's Order is affirmed.

_____

**RENÉE COHN JUBELIRER, Judge**

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Richard Carl Worrell, Jr.,      :
     :
            Appellant      :
     :
         v.      :    No. 291 C.D. 2014
     :
Commonwealth of Pennsylvania,      :
Department of Transportation,      :
Bureau of Driver Licensing      :

**O R D E R**

**NOW**, September 2, 2014, the Order of the Court of Common Pleas of Lawrence County, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER, Judge**